USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/2/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARLES PHILLIPS, ALFRED J. VENT,
each individually as residents and as area
representatives in Prospect Park, and JAY
WEINBERGER, as resident of Prospect
Park,

                Plaintiffs,

   -against-

KERRY A. DELANEY, individually and as
Acting Commissioner of the Office for
Persons with Developmental Disabilities;
OFFICE OF PERSONS WITH
DEVELOPMENTAL DISABILITIES;
STANLEY SILVERSTEIN, individually
and as Director of the Institutes of Applied
Human Dynamics; INSTITUTES OF
APPLIED HUMAN DYNAMICS; MARY
T. ST. MARKS, as President of the Board
of Directors for Institutes of Applied Human
Dynamics; THOMAS ROACH, individually
and as Mayor of the City of White Plains,
New York; and the CITY OF WHITE
PLAINS, NEW YORK,

                Defendants.

---

**OPINION AND ORDER**
19-cv-5113 (NSR)

NELSON S. ROMÁN, United States District Judge

      Plaintiffs Charles Phillips and Alfred J. Vent (together, "Plaintiffs"),[1] proceeding *pro se*,

commenced the present action against Kerry A. Delaney, the commissioner of the New York

State Office for People with Developmental Disabilities (the "OPWDD"), and the OPWDD

(together, the "State Defendants"); Stanley Silverstein, the Director of the Institute of Applied

Human Dynamics (the "IAHD"), the IAHD, and Mary T. St. Marks, the President of the Board

---

[1] Plaintiff Jay Weinberger was permitted to withdraw from this action on July 25, 2019. (ECF No. 36.)

of the Directors of the IAHD (collectively, the "IAHD Defendants"); and Thomas Roach, the

Mayor of the City of White Plains, and the City of White Plains (the "City") (together, "City

Defendants," and together with the State Defendants and the IAHD Defendants, "Defendants")

in the New York State Supreme Court, Westchester County, on or about May 15, 2019.  (*See*

ECF No. 1.)  On May 31, 2019, the action was removed to the United States District Court for

the Southern District of New York.  (*Id.*)  Plaintiffs filed the Amended Complaint, the operative

complaint in this action, on July 17, 2019.  (ECF No. 34.)  Plaintiffs allege that, in their attempts

to open a group home for individuals with developmental disabilities in the Prospect Park

neighborhood in White Plains, New York, Defendants have committed various state law torts

including fraud, conspiracy to commit fraud, and negligence.[2]  (*Id.*)

   Presently before the Court are (1) the State Defendants' motion to dismiss this action

pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 69); (2) the IAHD Defendants'

motion to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

8, and 10, (ECF No. 65); and (3) the City Defendants' motion to dismiss this action pursuant to

Federal Rule of Civil Procedure 12(b)(6) and for sanctions pursuant to Federal Rule of Civil

Procedure 11(c), (ECF No. 71).  For the reasons that follow, the State Defendants' motion is

GRANTED, the IAHD Defendants' motion is GRANTED, and the City Defendants' motion is

GRANTED in part and DENIED in part.

---

[2] Plaintiffs' original Complaint included claims that Defendants violated Plaintiffs' rights under the United States Constitution.  (*See* ECF No. 1 Ex. A.)  However, Plaintiffs have withdrawn all constitutional claims in the Amended Complaint.

## BACKGROUND

### A. Factual Background[3]

On December 15, 2016, the IAHD, a non-profit that operates community residences for people with developmental disabilities, notified the City of its intent to establish a group home in the City's Prospect Park neighborhood.  (*See* Exhibits to Complaint ("Complaint") (ECF No. 7) Ex A.)  On March 9, 2017, the White Plains Common Council voted to disapprove the establishment of the proposed group home, citing public safety concerns.  (*Id.*)  Namely, certain members of the Common Council expressed their concern for the "walking community" of Prospect Park, which features narrow streets and no sidewalk protection.  (*Id*.)  The council members feared that the large passenger vans and shuttle busses required by the group home would pose a safety risk to pedestrians and that the narrow street would inhibit fire truck access to the proposed group home.  (*Id.*)

On April 19, 2017, the OPWDD held a Commissioner's hearing pursuant to Mental Hygiene Law § 41.34 to review the municipality's objection to the group home.  (*See* Am. Compl. (ECF No. 34) ¶ 5; Complaint Ex. I.)  Plaintiffs allege that at the hearing, Defendant Silverstein testified falsely under oath that the IAHD had to leave its original location in Mount Vernon because "continued tenancy was not possible there."  (Am. Compl. ¶ 5.)  The OPWDD Commissioner, Defendant Delaney, issued a decision on June 27, 2017, overruling the White Plains City Council's objection and allowing the IAHD to move forward with the Prospect Park group home.  (*Id.*; Complaint Ex. I.)

---

[3] The facts in this section are taken from the Amended Complaint and the exhibits to the original Complaint, which are referenced but not re-attached in the Amended Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (internal quotation marks omitted)).

Shortly thereafter, members of the Prospect Park Association (the "Association"), including Plaintiffs, met with the Mayor of White Plains, Thomas Roach, to voice their dissent to the OPWDD's decision.  (Am. Compl. ¶ 7.)  Mayor Roach informed Plaintiffs that he would not seek judicial review pursuant to a CPLR Article 78 hearing for review of the OPWDD's decision.  (*Id.*)  No Article 78 petition was ever filed by either the City or Plaintiffs.

Plaintiffs allege that on September 13, 2017, they learned that Silverstein's representation at the hearing that the IAHD had to leave its former location in Mount Vernon was false.  (*Id.* ¶ 8.)  On September 28, 2017, they informed counsel for the City Defendants of this alleged perjury.  (*Id.* ¶ 9.)  Counsel for the City Defendants then wrote a letter to Defendant Delaney requesting that he "re-open the hearing and find, on the basis of the new evidence, that there is no necessity for the proposed community residence."  (Am. Compl. ¶ 14; Compl. Ex. M-1.)  Counsel for the IAHD Defendants opposed the application, stating, *inter alia*, that it was untimely as the City knew of the "new facts" set forth in their application prior to the expiration of their deadline to seek judicial review and the date when the IAHD closed on its purchase of the new group home.  (Am. Compl. ¶ 15; Compl. Ex. M-2.)  The OPWDD rejected the City Defendants' request to re-open the hearing as unwarranted and without basis in the law, noting that the proper vehicle for administrative review of a final decision of the OPWDD is an Article 78 proceeding.  (Am. Compl. ¶ 16; Compl. Ex. M-3.)  Counsel for the City Defendants objected to the OPWDD's determination and again requested that the hearing be re-opened.  (Am. Compl. ¶ 15; Compl. Ex. M-4.)

Based on the foregoing, Plaintiffs assert claims sounding in nuisance, fraud, conspiracy to commit fraud, and negligence.  (Am. Compl. ¶¶ 41–47.)

### B.  Procedural Background

On June 1, 2018, the Association commenced an action (the "2018 Action") pursuant to 42 U.S.C. § 1983, alleging violations of its members' Fourteenth Amendment equal protection and due process rights by certain of the Defendants in this action, based on facts and circumstances nearly identical to those set forth in this action.  *See Prospect Park Association, et al. v. Kerry A. Delaney, et al.*, Case No. 18-cv-4852 (NSR).  The Association subsequently requested a temporary restraining order and preliminary injunction to enjoin the defendants from taking any steps in furtherance of the establishment of a group home in Prospect Park pending the resolution of the litigation.   By Order dated July 23, 2018, the Court denied the Association's application, holding, *inter alia*, that the Association failed to plausibly allege a Fourteenth Amendment equal protection claim, failed to show a serious question going to the merits of its due process claims, and failed to identify any property interest at stake in the creation of a group home in the Prospect Park neighborhood.  *See Prospect Park Association*, Case No. 18-cv-4852 (NSR), ECF No. 21.

After service in the 2018 Action of an amended complaint substituting individual plaintiffs including Plaintiffs Phillips and Vent in the place and stead of the Association, counsel of record in the 2018 Action withdrew and all of the individual plaintiffs, except for Phillips and Vent, agreed to withdraw their claims.  *Id.*, ECF No. 30.  On November 16, 2018, Plaintiffs Phillips and Vent were granted leave to discontinue the 2018 Action without prejudice.  *Id.*, ECF No. 32.

Approximately six months later, Plaintiffs filed this action in state court, and Defendants removed.  (ECF No. 1.)  Plaintiffs filed the Amended Complaint on July 17, 2020.  (ECF No. 34.)  At a pre-motion conference held on July 18, 2019, the Court dismissed any claims made by

the *pro se* plaintiffs on behalf of corporate entities or other individuals, as *pro se* litigants lack legal standing to represent anyone other than themselves.[4]  The Court also confirmed that Plaintiffs withdrew all constitutional claims asserted in the original Complaint.  Finally, the Court granted Defendants leave to file the instant motions to dismiss.

## LEGAL STANDARDS

### I.        Rule 12(b)(6)

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

The critical inquiry is whether the plaintiff has pleaded sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  In fact, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]."  *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).  Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief

---

[4] This includes any claims Plaintiffs sought to make related to "abuse of the disabled by gratuitous anathema transfer trauma," which appear to arise from allege harm to the members of the proposed group home. (Am. Compl. ¶ 21.)

above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## II.     Rule 12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority.  *See* Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings.  *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  Plaintiffs bear the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction of the claim asserted.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

## III.     Rule 11

Generally, Rule 11 provides that every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name or by a party personally if the party is unrepresented.  Fed. R. Civ. P 11(a).  By presenting to the court a pleading, written motion, or other paper, an attorney, or party, attests that to the best of the person's knowledge, information, and belief that (1) the document it is presenting is for a proper purpose, and not to harass, cause unnecessary delay, or purposefully increase the cost of litigation; (2) the claim(s), defense(s), and legal contentions being presented are justified by prevailing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of

factual contentions are warranted on the evidence or, if specifically so identified, are reasonably

based on belief or a lack of information. Fed. R. Civ. P. 11(b).  "If, after notice and a reasonable

opportunity to respond, the court determines that Rule 11 has been violated, the court may impose

an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible

for the violation." Fed R. Civ. P. 11 (c)(1).

Typically, sanctions should be imposed only in "extraordinary circumstances."  *Graves v.
Deutsche Bank Sec, Inc.*, No. 07-CV-5471(BSJ), 2010 WL 997178, at *7 (S.D.N.Y. Mar. 18, 2010)

(internal quotation marks omitted).  The court's authority to levy sanctions is limited to what is

"sufficient to deter repetition of such conduct."  *See Simon DeBartolo Grp., L.P. v. Richard E.
Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (internal citations omitted).  Liability under

Rule 11 for the imposition of sanction requires a showing of "objective unreasonableness on the

part of the attorney or client signing the papers."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579

F.3d 143, 150 (2d Cir. 2009) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)).

Pleadings violate Rule 11 if they are determined to be frivolous, legally unreasonable, or factually

without foundation, even if they are not signed in bad faith.  *Wechsler v. Hunt Health Sys., Ltd.*,

216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002).  Likewise, the imposition of sanctions has been deemed

appropriate upon a showing that the allegations were utterly lacking in support.  *See Storey v. Cello
Holdings*, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003).

The imposition of sanctions is collateral to and independent from the underlying case such

that the district court has jurisdiction to impose sanctions, if warranted, irrespective of the status

of the underlying claims or case.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96

(1990); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992); *Chemiakin v. Yefimov*, 932

F.2d 124, 127 (2d Cir. 1991).  Whether to grant sanctions under Rule 11 should be "made with

restraint."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999).  The

decision to impose sanctions is not mandatory, but rather is a matter for the court's discretion, such

that the Court need not impose sanctions even when there has been a judicial determination that

Rule 11 has been violated.  *See* Fed. R. Civ. P. 11(c) (the court "may ... impose an appropriate

sanction...."); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *Lorber v.

Winston*, 993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014).

## IV.    <u>New York Mental Hygiene Law § 41.34</u>

Mental Hygiene Law § 41.34 sets forth the procedure for the establishment of community

residential facilities for individuals with disabilities in the State of New York.  Pursuant to §

41.34, a "sponsoring agency" must first notify the chief executive officer of a municipality of its

intention to establish such a facility at a particular site.  N.Y. MHL § 41.34(c)(1).  The

municipality then has forty days after receipt of such notice to either:

> (A) approve the site recommended by the sponsoring agency; (B) suggest one or
> more suitable sites within in its jurisdiction which could accommodate such a
> facility; or (C) object to the establishment of a facility of the kind described by the
> sponsoring agency because [it] would result in such a concentration of community
> residential facilities for the mentally disabled in the municipality or in the area in
> proximity to the site selected . . . that the nature and character of the areas within
> the municipality would be substantially altered.

*Id.*

In the event the municipality objects to the establishment of the facility, the

sponsoring agency may "request an immediate hearing before the [OPWDD]

[C]ommissioner to resolve the issue." N.Y. MHL § 41.34(c)(5). The OPWDD

Commissioner "shall personally or by a hearing officer conduct such a hearing within

fifteen days of such a request."  *Id.*  In reviewing any objections to the establishment of a

residential facility, the Commissioner will consider: (1) the need for such facilities in the

municipality, and (2) the concentration of such facilities and other similar facilities in the

municipality or in the area in proximity to the site selection.  "The [C]ommissioner shall

sustain the objection if he determines that the nature and character of the area in which the

facility is to be based would be substantially altered as a result of [the] establishment of the

facility."  *Id.*  Any review of the decision rendered by the Commissioner must be conducted

via an Article 78 hearing.  N.Y. MHL § 41.34(d).


## DISCUSSION

As a preliminary matter, the Court notes that Plaintiffs' Amended Complaint, filed after

this action was removed pursuant to this Court's federal question jurisdiction, withdrew all of

Plaintiffs' claims arising under the United States Constitution or other federal law.

Ordinarily, "when a plaintiff files a complaint in federal court and then voluntarily

amends the complaint, courts look to the amended complaint to determine jurisdiction."

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74. (2007).  Thus, if this case had been

filed originally in federal court, this Court would be obliged to dismiss it upon the filing of the

Amended Complaint, which dropped all constitutional claims and thereby destroyed the only

basis for federal jurisdiction.

However, as this is a removal case, different standards apply.  "[W]hen a defendant

removes a case to federal court based on the presence of a federal claim, an amendment

eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction."  *Id.*

at 474 n. 6 (noting that "removal cases raise forum-manipulation concerns that simply do not

exist when it is the plaintiff who chooses a federal forum and then pleads away jurisdiction

through amendment"); *see In Touch Concepts, Inc. v. Cellco Partnership*, 788 F.3d 98, 101 (2d

Cir. 2015) (extending principle that "a post-removal amendment does not defeat federal jurisdiction premised on a federal question or on diversity" to case removed under the Class Action Fairness Act); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507–08 (5th Cir. 1985) ("The rule that a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions serves the salutary purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute.").  Thus, even though Plaintiffs have withdrawn all federal claims, the Court may properly exercise its discretion to maintain subject-matter jurisdiction since removal was proper.  *See Nanavati v. New School for Social Research*, 2020 WL 1876359, at *2 (S.D.N.Y. April 15, 2020) ("[W]hen plaintiffs drop their federal claims, federal courts have the discretion to determine whether to remand the state claims or to retain the supplemental jurisdiction that was acquired at the time of removal under 28 U.S.C. § 1367." (quotation marks omitted) (citation omitted)).

Having been satisfied that the continued exercise of jurisdiction over this matter is appropriate, the Court turns to Defendants' motions.

## I.    State Defendants' Motion to Dismiss

Plaintiffs allege that the State Defendants suborned Defendant Silverstein's perjury when the OPWDD denied the City Defendants' application to reopen the Mental Hygiene Law § 41.34 hearing (the "Padavan hearing").  (Am. Compl. ¶¶ 16, 44, 46; Compl. Ex. M-3.)  Construing the Amended Complaint liberally, Plaintiff seeks to state claims sounding in fraud against the State Defendants arising from this allegation.[5]

---

[5] The State Defendants address portions of the memorandum in support of their motion to Plaintiffs' former constitutional claims, noting that the Amended Complaint contains a reference to 42 U.S.C. § 1983.  (State Defs.' Mem. in Support of Mot. to Dismiss (ECF No. 70) 4–7 (citing Am. Compl. ¶ 35).)  However, Plaintiffs indicated to the Court at a conference held on July 18, 2019, that in filing the Amended Complaint they had sought to withdraw

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." *City of New York v. Smokes–Spirits. Com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008) (citations omitted).  The Amended Complaint fails to state a fraud claim that is plausible on its face against the State Defendants because, *inter alia*, it is devoid of any factual allegations that the State Defendants made a material misstatement or omission to Plaintiffs, or that Plaintiffs relied upon such misstatement or omission.

Plaintiffs' opposition attempts to cure this deficiency by introducing the claim that the State Defendants made an affirmative misrepresentation whereby "new evidence was misrepresented in order to be treated as old."  (Pls. Opp. to Defs.' Mots. ("Pl. Opp.") (ECF No. 76) ¶ 7.)  Plaintiffs appear to be arguing that the letter sent from the OPWDD general counsel to the City Defendants' counsel denying their application to re-open the Padavan hearing, (Compl. Ex. M-3), misrepresented that what the City Defendants introduced as "new" evidence was in fact known to City Defendants at some point prior to their application.  However, the letter Plaintiff references contains no such statement.  Rather, the letter states that the City Defendants' request for a re-hearing is "unwarranted" and without basis in the law because the proper process for administrative review of the OPWDD's determination is set forth in the Mental Hygiene Law.  (Compl. Ex. M-3.)  Pursuant to the Mental Hygiene Law, the remedy for appeal of an administrative decision is an Article 78 proceeding.  N.Y. MHL § 41.34(d).  Plaintiffs appear to

---

all of their constitutional claims.  In any event, Plaintiffs do not address any of the State Defendants' constitutional arguments in their opposition.  To the extent Plaintiffs sought to state a constitutional claim, such claim is deemed abandoned.  *See McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (a "plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims" (citation omitted) (collecting cases)).

be conflating the OPWDD's letter with the letter from counsel for the IAHD Defendants opposing the City Defendants' application, (Compl. Ex. M-2), which argued, *inter alia*, that the City Defendants knew of the "new facts" set forth in their application prior to the expiration of their deadline to seek judicial review.

Thus, Plaintiffs still have not pointed to any misstatement or omission made by the State Defendants.  Indeed, they have not even identified a single statement made by the State Defendants to them, rather than to the City Defendants.  Nor have Plaintiffs alleged that they took any action, or failed to act, based on anything the State Defendants said or failed to say. Accordingly, Plaintiff's fraud claim against the State Defendants remains inadequately pleaded.

Though the Amended Complaint is unclear as to which Defendants Plaintiffs seek to assert their fifth cause of action sounding in Medicaid fraud, it is likewise inadequately pleaded against the State Defendants, and all other Defendants, because neither federal nor New York state law permits a private cause of action for Medicaid fraud.  *See, e.g.*, *Vetere v. City of New York*, No. 19-CV-9665 (CM), 2019 WL 6684071, at *2 (S.D.N.Y. Dec. 5, 2019) ("To the extent Plaintiff's assertions could be read as seeking relief under the Medicaid anti-fraud statute, she cannot proceed with a private right of action under that statute."); *Donovan v. Rothman*, 106 F. Supp. 2d 513, 516 (S.D.N.Y. 2000) ("There is no private cause of action to redress violations of the federal health care fraud statute."); N.Y. Social Services Law § 145-b(2) (permitting only "the local services division or the State" to maintain an action to recover civil damages for fraudulently obtaining public funds).  Plaintiffs' claims sounding in Medicaid fraud must therefore be dismissed.

Similarly, to the extent Plaintiffs seek to state an alternative claim against the State Defendants arising from the OPWDD's alleged subornation of Defendant Silverstein's perjury,

there is no private right of action for perjury or suborning perjury under New York law.  *See, e.g.*, *Minus v. Spillane*, No. 17-CV-4623 (JMF), 2019 WL 6498258, at *4 (S.D.N.Y. Dec. 3, 2019) (dismissing claim sounding in perjury because there is no private right of action for perjury under New York law); *Carvel v. Ross*, No. 09 Civ. 0722(LAK)(JCF), 2011 WL 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (same); *Abrahams v. Inc. Village of Hempstead*, No. 08 CV 02584(SJF)(WDW), 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (same); *Sash v. City of New York*, No. 05-CV-1544, 2006 WL 2474874, *6 n.5 (S.D.N.Y. Aug. 11, 2006) ("[P]erjury and subornation of perjury … are not cognizable civil claims under either New York State or federal law." (citation omitted)).  Any claim sounding in subornation of perjury or perjury against the State Defendants, or any other Defendants, must be dismissed on this basis. Likewise, since New York does not recognize an independent tort of conspiracy, Plaintiffs' claims sounding in conspiracy to commit fraud must be dismissed.  *See Kirch v. Liberty Media Group*, 449 F.3d 388, 401 (2d Cir. 2006) (stating that "a mere conspiracy to commit a tort is never of itself a cause of action" (internal quotation marks omitted) (citations omitted)).

Finally, while Plaintiffs seek to have "this lawsuit convert[ed] into a criminal inquiry," (Am. Compl. ¶ 43), "a private citizen cannot prosecute a criminal action, such as perjury, in federal court."  *Bennett v. Falcone*, No. 05–CV–1358 (KMK)(LMS), 2009 WL 816830, at *3 n.7 (S.D.N.Y. March 25, 2009); *see Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) (noting that it is a "truism" long recognized by federal courts that crimes are always prosecuted by the government and not by private complaint).

For all the foregoing reasons, the Amended Complaint must be dismissed as against the State Defendants in its entirety.

**II.     IAHD Defendants' Motion to Dismiss**

Construed liberally, the Amended Complaint attempts to state claims against the IAHD

Defendants sounding in nuisance and fraud.  These claims arise out of Plaintiffs' contentions that

the planned group home, which will be operated by the IAHD, will create numerous health and

safety issues for Plaintiffs, as well as the alleged "fraudulent" conduct of Defendant Silverstein

at the Padavan hearing.  The IAHD Defendants move to dismiss all claims against them.

**a.  Nuisance Claims**

Plaintiffs' first cause of action alleges that the planned group home is a "public

nuisance," "private nuisance," and "private menace" due to the alleged health and safety issues

arising from the project.  (Am. Compl. ¶ 41.)  However, the planned group home is not yet open

and all of Plaintiffs' allegations are based on claims of possible future injury.  Specifically,

Plaintiffs are concerned that "the daily influx of 16 and possibly up to 20 vans/shuttlebuses"

associated with the group home will pose a danger to those walking in Prospect Park, as streets

in the neighborhood are narrow with no sidewalks and the IAHD vehicles would have "zero

clearance" when sharing the road with school buses.  (*Id.* ¶ 3.)  Plaintiffs observe that "many

school buses" currently operate in Prospect Park but do not appear to have the same concerns

about dangers related to their operation.  (*Id.*)

The IAHD Defendants argue that Plaintiffs lack standing to bring claims arising from the

future operations of the group home in Prospect Park.

The Supreme Court has called the doctrine of standing "perhaps the most important" of

the case-or-controversy doctrines placing limits on federal judicial power as it derives directly

from the Constitution.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The doctrine requires a

plaintiff to have a "personal stake," in the outcome of the action.  *Summers v. Earth Island*

*Institute*, 555 U.S. 488, 493 (2009).  That is, a plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen*, 468 U.S. at 751.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), and citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  The party seeking to invoke federal jurisdiction has the burden of establishing each element.  *See Spokeo*, 136 S. Ct. at 1547; *Ali v. N.Y. City Envtl. Control Bd.*, No. 14-CV-00312 (SLT)(CLP), 2015 WL 728163, at *3 (E.D.N.Y. Nov. 16, 2015). On a motion to dismiss, "the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  *Am. Bird Conservancy v. Harvey*, No. 16-cv-1582 (ADS)(AKT), 2017 WL 477968, at *7 (E.D.N.Y. Feb. 6, 2017) (citing *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016)) (quoting *Amidax Trading Grp. v. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)); *Ali*, 2015 WL 7281633, at * 4.

Here, the IAHD Defendants challenge Plaintiffs' standing on the grounds that Plaintiffs do not allege the first element of Article III standing: an injury-in-fact.  "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized,'" *Spokeo*, 136 S. Ct. at 1545 (quoting *Friends of the Earth*, 528 U.S. at 180–81), and "actual or imminent, not conjectural or hypothetical," *id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Concreteness refers to the "realness" of the injury, meaning that the injury "must actually exist"

and cannot be "abstract." *Id.* at 1548.  The particularity requirement means that an injury "must affect the plaintiff in a personal and individual way." *Id.*

The Court concludes that Plaintiffs' allegations are too speculative to support standing. Plaintiffs' assertions about the number and type of vehicles IAHD will use and the poor safety record of IAHD van drivers appear to be based at least in part on the operation of the IAHD home in Mount Vernon and new articles Plaintiffs have collected about IAHD van incidents elsewhere.  (Compl. Ex F at 119 (testimony of Plaintiff Phillips at Padavan Hearing stating that he obtained information about the vans to be used by IAHD based on Defendant Silverstein's mention of a vehicle that is used to transport Mount Vernon residents and by visiting the group home in Mount Vernon and observing a van in the driveway); *id.* Ex. R-1 (document created by Plaintiffs entitled "IAHD Van Accidents and Security Management Issues" collecting news articles).  To the extent Plaintiffs' claim of harm is based on the mere probability that the new group home will share the same features and problems as the group home in Mount Vernon, Plaintiffs do not plead a concrete injury.  *See Feinberg v. Apple, Inc.*, No. 15-CV-5198 (RA), 2016 WL 4371746, at *2 (S.D.N.Y. Aug. 10, 2016) (no injury-in-fact where plaintiff brought nuisance claims in connection with opening of Apple retail store, alleging that purported issues at other Apple retail stores established probability that same conditions would be present at the new store).  Similarly, Plaintiffs' assertions that the IAHD vehicles will bring to Prospect Park a parade of horribles, notwithstanding the present daily passage of other large vehicles such as school buses and delivery trucks without incident, are based on conjecture rather than fact.

Even if the Court were to ignore the foregoing issues and construe Plaintiffs' allegation of injury by way of increased traffic as sufficiently concrete, it is not particularized.  Increased traffic on the public streets of Prospect Park impacts all citizens who live in the area as well as

17

those who visit or use the roads to get from one place to another.  Thus, Plaintiffs describe a generalized grievance rather than an injury that affects them in a personal and individual way. *See Gagliardi v. City of Boca Raton*, No. 16-CV-80195-KAM, 2017 WL 5239570, at *6 (S.D. Fl. March 28, 2017) (dismissing complaint for lack of standing where plaintiff citizens of Boca Raton, Florida, alleged establishment of religious project in Boca Raton created, among other things, traffic-related issues and alteration of character of surrounding area because "the increased traffic described by Plaintiffs is a generalized grievance").

For the foregoing reasons, the Court agrees with the IAHD Defendants that Plaintiffs lack Article III standing to pursue their nuisance claims at this time.  Since dismissal is for lack of subject matter jurisdiction rather than on the merits, it is necessarily without prejudice.  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017).

### b.  Fraud/Perjury Claims

The only non-speculative allegation Plaintiffs make with regard to the "fraud and deceit" of the IAHD Defendants is that Defendant Silverstein perjured himself at the Padavan hearing. Specifically, Plaintiffs contend that Defendant Silverstein falsely represented, under oath, that IAHD could not continue to run its group home in Mount Vernon because its lease was expiring and could not feasibly be extended.  This is insufficient to state a claim sounding in fraud on Plaintiffs' behalf.  While Plaintiffs identify an alleged misrepresentation, they fail to plausibly allege that the statement was made with the intention of inducing *Plaintiffs'* reliance, or that *Plaintiffs* justifiably relied on the statement in any manner.  Indeed, the alleged misrepresentations were not even made to Plaintiffs but to the OPWDD Commissioner at a proceeding Plaintiffs were not parties to.  *See Aymes v. Gateway Demolition Inc.*, 817 N.Y.S.2d 233, 234 (App. Div. 2006) ("To the extent plaintiff asserts a fraud claim, he lacks standing

because the alleged misrepresentations were made to the City, not to plaintiff or the previous property owner.").

Finally, as the Court has explained, Plaintiff may not bring a claim sounding in perjury against the IAHD Defendants because there is no private right of action for perjury under New York law.  *See infra* pp. 13–14.  Likewise, any claim sounding in conspiracy to commit fraud or Medicaid fraud against the IAHD Defendants fails.  *See id.*  These claims must be dismissed as against the IAHD Defendants.

For the foregoing reasons, the Amended Complaint is dismissed as against the IAHD Defendants in its entirety.

## III.    City Defendants' Motion to Dismiss and Motion for Sanctions

Construed liberally, the Amended Complaint asserts claims against the City Defendants sounding in negligence, fraud, and conspiracy to commit fraud.  Such claims arise from Plaintiffs' allegations that the City Defendants negligently failed to challenge the OPWDD's decision by commencing an Article 78 petition after discovering Defendant Silverstein's alleged perjury and that they thereby participated in the IAHD's "conspiracy-and-perjury-promoted fraud."  (*See* Am. Compl. ¶¶ 21, 46.)  The City Defendants move to dismiss all of Plaintiffs' claims against them.  They also move for sanctions against Plaintiffs pursuant to Federal Rule of Civil Procedure 11.

### a.   Negligence Claims

Under New York law, which governs Plaintiffs' negligence claims, "[t]o establish a *prima facie* case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of injury to the plaintiff."  *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176,

205 (E.D.N.Y. 2014) (quoting *Nappi v. Inc. Vill. of Lynbrook*, 796 N.Y.S.2d 537 (App. Div. 2005)).

"When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.'" *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 425 (2013)). If the State or municipality is "engage[d] in a proprietary function, such as providing medical and psychiatric care ..., the State [or municipality] is held to the same duty of care as private individuals and institutions engaging in the same activity[.]" *Schrempf v. State of New York*, 66 N.Y.2d 289, 294 (1985); *Sebastian v. State*, 93 N.Y.2d 790, 793 (1999) ("proprietary functions" are those "in which governmental activities essentially substitute for or supplement 'traditionally private enterprises'").

Where, as here, a municipality is engaged in an undoubtedly governmental function — "when its acts are undertaken for the protection and safety of the public pursuant to the general police powers," *Applewhite*, 21 N.Y.3d at 425 — two considerations arise. First, to be subject to liability the government must owe the plaintiff a "special duty" beyond that owed to the general public. *Velez*, 730 F.3d at 135; *Graham v. City of New York*, 24 N.Y.S.3d 754, 756 (App. Div. 2016) (a "special duty is a duty to exercise reasonable care toward the plaintiff, and is born of a special relationship between the plaintiff and the governmental entity") (quotation marks and citations omitted). Second, a determination as to whether the governmental function was discretionary or ministerial is required. This is because in New York "the common law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of governmental functions," as opposed to those acts which

are "essentially clerical or routine[.]"  *Valdez v. City of New York*, 18 N.Y.3d 69, 75–76, 79

(2011).

"[W]hen both of these doctrines are asserted in a negligence case, the rule that emerges

is that '[g]overnment action, if discretionary, may not be a basis for liability, while ministerial

actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty

to the public in general." *Id.* (quoting *McLean v. City of New York*, 12 N.Y.3d 194, 203 (2009)).

Plaintiffs assert in conclusory terms that the City Defendants acted in "violation of the

exception of special duty of care owed to Prospect Park" and that such duty arose "under the

special exemption of care under the Public Officers Law."  (Am. Compl. ¶¶ 21, 46.)  As a

preliminary matter, there is no section of the Public Officers Law of New York State that creates

a special duty of care running from any of the City Defendants to Plaintiffs.  Rather, to establish

a special duty of care, Plaintiffs must allege facts plausibly establishing the following elements:

> (1) an assumption by the municipality, through promises or actions, of an
> affirmative duty to act on behalf of the party who was injured; (2) knowledge on
> the part of the municipality's agents that inaction could lead to harm; (3) some
> form of direct contact between the municipality's agents and the injured party;
> and (4) that party's justifiable reliance on the municipality's affirmative
> undertaking.

*Velez*, 730 F.3d at 135 (quoting *Applewhite*, 21 N.Y.3d at 430–31).

Here, Plaintiffs contend that after the OPWDD rejected the City's objections to the group

home, but before Defendant Silverstein's alleged fraud was discovered, Defendant Mayor Roach

met with Plaintiffs and explained he would not seek judicial review of the OPWDD's

determination.  (Am. Compl. ¶ 7.)  Plaintiffs do not allege that Mayor Roach ever promised them

he would initiate an Article 78 proceeding.  Instead, Plaintiffs consistently raise Mayor Roach's

"refusal to seek" judicial review as the crux of their grievances against the City Defendants.  (*See*

Am. Compl. ¶¶ 17, 46.)  Since Plaintiffs have not alleged any affirmative undertaking on the part

21

of the City Defendants, and have identified no promise upon which they relied, there was no "special duty of care" owed by the City Defendants to Plaintiffs.[6]

Furthermore, even if Plaintiffs had adequately pleaded the existence of a special duty, the City Defendants cannot be held liable for their decision not to pursue an Article 78 proceeding because, while Plaintiffs contend otherwise, such decision was a clear exercise of discretion. Discretionary acts, such as the decision not to pursue judicial review of an administrative determination, "involve the exercise of reasoned judgment." *Valdez*, 18 N.Y.3d at 76. In contrast, ministerial acts "envision[] direct adherence to a governing rule or standard with a compulsory result." *Tango v. Tulevech*, 61 N.Y.2d 34, 41 (1983). As the City Defendants recognize, to hold that the pursuit of Article 78 review is ministerial would mean that municipal actors such as the City Defendants are required to challenge every adverse administrative decision as a matter of course. Such a rule would plainly be improper.

The arguments raised in Plaintiffs' opposition do not change this analysis. Plaintiffs' contention that Mayor Roach does not have any discretion to act because he is not a judge, (Pl. Opp. ¶ 4), misconstrues the legal standard for liability and the distinction between discretionary and ministerial acts. There is no legal authority for Plaintiffs' proposition that only judges may take discretionary acts. Indeed, courts frequently find that non-judicial municipal actors are shielded from liability for negligence because they acted pursuant to their discretion. *See, e.g.*, *Denis v. Town of Haverstraw*, 852 F. Supp. 2d 405, 414 (S.D.N.Y. 2012) (noting that "lower New York courts have consistently found that when police officers direct traffic, they are

---

[6] The Court notes that Plaintiffs do not dispute that they had standing, individually, to initiate an Article 78 proceeding themselves. *See Grasmere Homeowners' Ass'n v. Introne*, 443 N.Y.S.2d 956, 956–57 (App. Div. 1981); *Ramapo Homeowners' Ass'n v. New York State Office of Mental Retardation*, 180 F. Supp. 2d 519, 524 (S.D.N.Y. 2002). This precludes any alternative argument that Plaintiffs justifiably relied on the City Defendants to vindicate their rights.

exercising a discretionary function"); *Doe v. Town of Greenwich*, 422 F. Supp. 3d 528, 542 (D. Conn. 2019) ("[I]t is clear to this Court that the [police officer] Defendants' decisions regarding how to investigate a complaint are discretionary acts.).

Likewise, Plaintiffs' reliance on *Osborn v. Bank of the United States*, 22 U.S. 738 (1824), in which the Supreme Court upheld the authority of Congress to charter the Second Bank of the United States, is misplaced.  The passaged cited by Plaintiffs in *Osborn* addresses the role and discretion of the Supreme Court in cases involving acts of Congress.  *See id.* at 866.  It has no bearing on the distinction between discretionary and ministerial acts for purposes of a negligence analysis.

For the foregoing reasons, Plaintiffs' negligence claims against the City Defendants are dismissed.

### b.  Fraud Claims

Plaintiffs' fraud claim against the City Defendants must also be dismissed as Plaintiffs fail to identify any misrepresentation or omission by the City Defendants on which they reasonably relied.  Moreover, for the reasons the Courts has already discussed, Plaintiffs do not state a claim against the City Defendants for conspiracy to commit fraud, perjury, suborning perjury, or Medicaid fraud.  *See infra* pp. 13–14.

### c.  Motion for Sanctions

At the Court's pre-motion conference on July 18, 2019, the Court directed any Defendants seeking to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 to submit a letter to chambers by August 15, 2019.  The City Defendants filed a letter dated August 16, 2019, indicating their intent to seek Rule 11 sanctions and seeking an extension of time to do so.  (ECF No. 47.)  The Court granted the City Defendants' application by

memorandum endorsement dated March 3, 2020.  (ECF No. 97.)  Since Plaintiffs have

responded to the City Defendants' arguments in favor of Rule 11 sanctions in their opposition,

and the City Defendants indicate that they properly served Plaintiffs with a 21-day notice in

accordance with Federal Rule of Civil Procedure 11(c)(2), the Court will consider the merits of

the City Defendants' application.[7]

      The City Defendants maintain that Rule 11 sanctions are appropriate here because "(i) the

[P]laintiffs filed the amended complaint knowing that the claims and legal contentions against

the City [D]efendants are not warranted under existing law; (ii) they have made factual

contentions that they know do not have evidentiary support; and (iii) the purpose of this

proceeding appears, based on the plaintiffs' knowledge of the facts and the existing law, to be to

harass the City [D]efendants and to cause the City [D]efendants needless litigation expense."

(City Defs. Mem. in Support of Mot. to Dismiss (ECF No. 73) 20.)

      City Defendants observe that the Amended Complaint is based on exactly the same facts

and circumstances as the two complaints filed in the 2018 Action.  In the 2018 Action, the Court

explained in a written opinion denying plaintiff Prospect Park Association's application for a

preliminary injunction that Plaintiffs' constitutional claims were deficient in numerous ways.

The Court further explained to Plaintiffs in the 2018 Action at a conference held on November 1,

2018, the various legal insufficiencies of their claims, which included fraud claims arising from

Defendant Silverstein's alleged perjury.  Plaintiffs subsequently voluntarily discontinued the

2018 Action, only to commence this action in state court approximately six months later.  In the

original Complaint, Plaintiffs asserted the exact same constitutional claims the Court found to be

---

[7] The IAHD Defendants timely sought leave to file a motion for Rule 11 sanctions on August 15, 2019.
(ECF No. 44.)  The Court denies the application without prejudice for the reasons discussed in this section.

deficient in the 2018 Action.  On the eve of a pre-motion conference in this matter, however, Plaintiffs filed the Amended Complaint, withdrawing their constitutional claims.

It is well-settled that "a party who re-files an action that is materially identical to an action previously dismissed by a court as being without legal merit is engaging in duplicative litigation that can result in the imposition of monetary sanctions under Rule 11."  *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014); *see Soling v. New York State*, 804 F. Supp. 532, 537 (S.D.N.Y. 1992); *Satterfeld v. Pfizer, Inc.*, No. 04 Civ. 3782, 2005 WL 1765708, at *12–14 (S.D.N.Y. July 18, 2005) (noting that duplicative litigation was sanctionable, but declining to impose sanctions because plaintiff was *pro se*).  Here, however, Plaintiffs indicate they sought dismissal of their claims in the 2018 Action without prejudice based on deficiencies with respect to their constitutional claims, not their state law claims.  (Pl. Opp. ¶ 14.)  Though Plaintiffs included those same constitutional claims in their original Complaint, they withdrew them prior to the filing of the instant motions.  Until now, there has been no written decision dismissing Plaintiffs' state law claims issued by the Court.

On the other hand, the Court has repeatedly cautioned Plaintiffs in both the 2018 Action and this action that their claims are insufficient for specific reasons.  Rather than correcting the deficiencies identified by the Court or withdrawing those claims that cannot be corrected, however, Plaintiffs have engaged in a pattern of behavior indicative of their contempt for all of this Court's directives, including those that have no bearing on the merits of their claims.  For example, in spite of the Court's denial of Plaintiffs' first motion for summary judgment for failure to comply with the Court's individual rules, Plaintiff filed a second such motion again in contravention of the Court's individual rules.  (*See* ECF No. 84.)  Similarly, even after the Court's written decision in the 2018 Action denying a motion for a preliminary injunction,

Plaintiffs made identical applications in this action twice within a single month.  (*See* ECF Nos. 86–91.)

Nonetheless, on the facts presently before it, and in an abundance of deference to Plaintiffs' *pro se* status, the Court declines to impose Rule 11 sanctions against Plaintiffs at this time.  However, the Court cautions Plaintiffs that their conduct toes the line: should Plaintiffs persist in their attempts to revive claims that this Court has explained time and again are legally inadequate, Rule 11 sanctions may become appropriate.

**IV.     Leave to Amend**

Although *pro se* plaintiffs are generally given leave to amend a deficient complaint, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999), a district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Valle v. Police Dep't Cnty. of Suffolk Cent. Records*, No. 10–CV–2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010) (leave to amend is properly denied where all indications are that the pro se plaintiff will be unable to state a valid claim).  The Court finds that to be the case here.  Plaintiffs have already had numerous opportunities to be heard on their claims in both state and federal court.  Indeed, the Amended Complaint is the fourth complaint filed on Plaintiffs' behalf arising out of the exact same set of facts.  Because it appears to the Court that amendment would be futile, the Court declines to grant leave to amend at this time.  *See Coleman v. BrokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (denial of leave to amend affirmed where *pro se* plaintiff made no specific showing as to how he would remedy defects in complaint); *cf. Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45–46 (2d Cir. 2008)

(district court did not exceed its discretion by not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Amended Complaint are GRANTED, and the motion for sanctions filed by Defendants City of White Plains and Thomas Roach is DENIED without prejudice.  Plaintiffs' public and private nuisance claims are dismissed without prejudice for lack of subject matter jurisdiction.  All other claims are dismissed with prejudice.  The Clerk of the Court is respectfully directed to mail copies of this Opinion to each pro se Plaintiff at the respective address listed on ECF, to show proof of service on the docket, to terminate the motions at ECF Nos. 65, 69, and 71 to close the case.


Dated:   October 2, 2020
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

27